1

2

3

4

5

6

7

8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DALE MASSIMO,                              No. 2:18-CV-0086-DMC

12              Plaintiff,

13      v.                                      MEMORANDUM OPINION AND ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16

17

18              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pursuant to the written consent of all parties (ECF Nos. 8 and 11), this case is before the

21   undersigned as the presiding judge for all purposes, including entry of final judgment. See 28

22   U.S.C. § 636(c). Pending before the court are the parties' briefs on the merits (ECF Nos. 17 and

23   20).

24              The court reviews the Commissioner's final decision to determine whether it is:

25   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26   whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is

27   more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521

28   (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

                                                    1

a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. <u>See</u> <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. <u>See</u> <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. <u>See</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, <u>see</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, <u>see</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

/ / /

2

Step 4      If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

Step 5      If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on September 17, 2014.  See CAR 22.[1] In the application, plaintiff claims disability began on January 1, 2010.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on October 6, 2016, before Administrative Law Judge (ALJ) Carol A. Eckersen.  In a November 23, 2016, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): post-traumatic stress disorder, anxiety disorder, asthma, and Meniere's disease;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: she can perform medium work; she may frequently climb ramps and stairs, but may never climb ladders, ropes, or scaffolds; the claimant may frequently kneel, crouch, or crawl, with no limitations on balancing or stooping; she should avoid concentrated exposure to fumes, odors, dusts, gases, and workplace hazards; she is limited to simple, repetitive tasks in a non-public setting; she may occasionally interact with coworkers and supervisors, but have no interaction with the public;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 24-34.

After the Appeals Council declined review on December 6, 2017, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on November 29, 2018 (ECF No. 14).

# III. DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ failed to apply the special procedures for the evaluation of mental illness; (2) the ALJ failed to properly evaluate the opinion of consultative psychologist, Dr. McVey, and instead substituted her opinion for the medical opinions; (3) the ALJ failed to provide clear and convincing reasons to reject Plaintiff's subjective testimony; (4) the ALJ failed to "provide evidence" that Plaintiff can perform medium work; and (5) the ALJ failed to meet the Commissioner's burden of proof regarding vocational findings at Step 5.

## A.    Mental Illness Evaluation

In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure. See 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The ALJ is required to record pertinent findings and rate the degree of functional loss. See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

In her brief, Plaintiff contends the ALJ failed to apply the special procedures in evaluating her mental impairment. A review of the hearing decision, however, reveals otherwise. Specifically, the ALJ documented the required findings in areas of social functioning, activities of daily living, concentration, persistence, and pace, and episodes of decompensation. See CAR 25-27. Plaintiff provides no argument that the ALJ erred in such documented findings.

## B.    Evaluation of Medical Opinions

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

/ / /

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and

convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

1. ALJ's Analysis

At Step 4, the ALJ evaluated the medical opinion evidence of record. See CAR 31-32. The ALJ stated:

> In assessing the claimant's residual functional capacity, I carefully considered the available medical opinions of record. No treating or examining medical source has offered an opinion that the claimant is unable to work or an assessment of what activities the claimant can still perform supporting such a conclusion during the relevant period. The lack of expert corroboration of the claimant's allegations renders them less tenable.

> Doctor Patricia McVey, Ph.D., a consultative examiner, opined that the claimant would be moderately to significantly impaired in her ability to interact with the public, coworkers, and supervisors, as well as deal with stress, with mild limitations in other functional areas. Dr. McVey had the opportunity to review some of the relevant medical records, and examine the claimant, and based her opinion off such evidence. However, Dr. McVey did not have access to all the relevant records, including those

7

from 2015 and 2016, which showed relatively normal mental status examinations and that the claimant was stable on her medication regime. Indeed, progress notes state she was suffering from no psychotic symptoms, manic episodes, panic attacks, or PTSD symptoms. (Exhibits 12F, 13F/16/19, 14F/4-6, 15F/10). As such, the residual functional capacity accounts for the entire longitudinal record, and while it does limit her to simple and repetitive tasks and limits her social interactions, the record fails to indicate that the claimant would be significantly impaired in her ability to handle stress and pressure in such work. Therefore, I afford this opinion partial weight.

In accordance with SSR 96-6p, I considered the opinions of the state agency consultants regarding the claimant's capacity to perform basic work activities. These opinions are weighed as statements from non-examining expert sources. The state agency psychiatric consultants opined on both initial review and reconsideration that the claimant can perform simple work with limited interaction from the public. The state agency medical consultants opined that the claimant can perform medium work with some postural and environmental limitations. (Exhibits 1A, 2A, 5A, 6A). The state agency consultants are experts in their respective fields and are familiar with Social Security rules and regulations governing disability. Further, they cited to specific evidence in the record in support of their opinions. Finally, their opinions are consistent with the record, including relatively benign mental status examinations, physical testing and examinations showing, for instance, no numbness, tingling, chest palpitations, weakness, shortness of breath, ear pain, or vision problems, and observations by care providers. As such, I afford these opinions great weight. (Exhibits 5E, 3F/4, 4F/1/3, 5F, 6F, 7F/2-4/11/22/24/27/37/8F, 10F/4-6/15/16/20/26/34/39/45, 11F, 12F, 13F/2/7/16/17/19, 14F/4-6, 15F/10/53/64/74).

CAR 31-32.

2. Plaintiff's Contentions

Plaintiff argues:

20 C.F.R. § 404.1520(a), SSR 85-15, and SSR 85-16 require the ALJ to address mental residual functional capacity. The ALJ cannot make an independent determination as to mental illness. *Garrison v. Colvin*, 759 F. 3d 995 (9th Cir. 2014). Although the ALJ states Massimo no longer has mental limitations she has not supported this conclusion with evidence. The ALJ must weigh the evidence, giving great weight to treating examiners versus non treating evaluators who have never seen the claimant; and provide documentation of the special technique including narration of the psychiatric review. The Ninth Circuit emphasizes the application of the technique is not optional. *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011). The ALJ must use a professional opinion from a medical authority, experts in mental illness. Here (A) the ALJ makes an independent determination as to residual functional capacity of Massimo's mental illness and (B) gives partial weight to the professional evaluation from Consultive [sic] Examiner Dr. McVey.

* * *

An ALJ cannot replace her opinion for that of a medical doctor to reach an independent medical conclusion contrary to law. *Clifford v. Apfel*, 227 F. 3d 863 (7th Cir. 2000) and *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). The ALJ is required to support his finding using a psychological expert's evaluation.

The ALJ finds Massimo has a severe mental impairment and acknowledges there is a longitudinal record;

> As asserted by her representative, and supported by the record, the claimant has a long history of mental health treatment stemming back to her childhood. She has also been subject to being mugged at gunpoint in 1989 and was involved in a physical altercation in 2009. The record evidence instances that the claimant was anxious (AR 29).

When the ALJ made the following finding it is made independently;

> "[Massimo's]symptoms seemed to improve with treatment." For instance, in January 2014, she had a normal mood and affect. . . with intact memory, judgment, and insight. A few months later, she was noted as cooperative and fully oriented, with appropriate mood and affect (AR 29).

The ALJ is not permitted to 'cherry pick' from those mixed results to support a denial of benefits. *Garrison v. Colvin*, 759 F. 3d 995, 1018 (9th Cir. 2014). Here the record does not support the ALJ as the record shows three psychiatric evaluations which contradict the ALJ's independent finding.

* * *

An ALJ may not reject the undisputed opinion of a treating physician without providing "clear and convincing" reasons that substantial evidence supports. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ is prohibited from cherry-picking the record to choose evidence unfavorable to the claimant while ignoring evidence favorable to the claimant. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). There must be a global analysis supported by evidence.

The ALJ gives Consultative Examiner's Dr. McVey's evaluation of partial weight (AR 31). Psychologist Dr. McVey conducted a comprehensive psychological evaluation using objective testing and clinical observation. Her evaluation is as an examining expert on mental illness. Dr. McVey diagnostic impression is; posttraumatic stress disorder, with chronic borderline personality trait (AR 662-669).

Dr. McVey found Massimo tests at 2% on verbal comprehension and 23% for working memory. Dr. McVey places Massimo in the 18% range for her full score IQ with; moderate to significantly impaired ability to relate and interact consistently with a supervisor or coworkers, impaired ability to understand, inability to remember or understand, carry out extensive variety of job instructions, and inability to deal with the public,

or withstand the stress and pressures associated with day to day fulltime work (AR 669).

The ALJ gives Dr. McVey's evaluation little weight;

> As such, the residual functional capacity accounts for the entire longitudinal record, and while it does limit her to simple and repetitive tasks and limits her social interactions, the record fails to indicate that the claimant would be significantly impaired in her ability to handle stress and pressure in such work. Therefore, I afford this opinion partial weight (AR 31).

Kaiser Psychiatrist Dr. Kabir, MD diagnoses Massimo with a panic disorder with Acrophobia and an anxiety disorder (AR 522). Dr. Kabir finds Massimo has a history of hypomania, panic attacks, anxious, nervous and tearful, with depression. Massimo presents as tearfully, anxious and overwhelmed, afraid of people and unable to interact. Her mental status examination showed her to be hyperkinetic and her mood anxious. (AR 522). Psychiatrist Overhold, MD states Massimo has significant personality traits (primarily borderline, but may also be somewhat dependent)(AR 533, 598). As such, Dr. McVey's evaluation is consistent with both treating Psychiatrists, Dr. Kabir, and Dr. Overhold. Therefore the ALJ's finding giving Dr. McVey partial weight is not supported by substantial evidence.

3. _Disposition_

This Court applies the "specific and legitimate" standard to analyze Plaintiff's claims because some of the consultative examiners' opinions contradict Dr. McVey's opinions regarding Plaintiff's mental residual functional capacity. See Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007). Plaintiff alleges the ALJ made an independent finding as to mental illness by "cherry-picking the record to choose evidence unfavorable to the claimant while ignoring evidence favorable to the claimant" and by failing to provide consultative examiner Dr. Patricia McVey's opinion great weight. The Court finds this argument unpersuasive. As Plaintiff concedes, the record includes both favorable and unfavorable evidence to the Plaintiff. The ALJ resolved the conflicting evidence and concluded:

> . . .Indeed, progress notes state she was suffering from no psychotic symptoms, manic episodes, panic attacks, or PTSD symptoms. (Exhibits 12F, 13F/16/19, 14F/4-6, 15F/10). As such, the residual functional capacity accounts for the _entire longitudinal record_, and while it does limit her to simple and repetitive tasks and limits her social interactions, the record fails to indicate that the claimant would be significantly impaired in her ability to handle stress and pressure in such work.

CAR 31 (emphasis added).

10

Although Dr. McVey opined that Plaintiff had an impairment in dealing with stress and pressure from day-to-day work activities, the ALJ considered the entire record, including the state agency consultants' opinions, and found that Dr. McVey's opinion on Plaintiff's mental impairment was unsupported and inconsistent with evidence in the record. The state agency consultants are experts in their respective fields, familiar with Social Security rules and regulations governing disability, and they cited to specific evidence in the record to support their opinions. Because the state agency consultants provided opinions consistent with the record, the ALJ did not "cherry pick" the record, nor make an "independent finding" of Plaintiff's mental illness. Rather, the ALJ properly used the entire record to evaluate Plaintiff's mental residual functional capacity.

Further, Plaintiff alleges the ALJ erred in affording Dr. McVey's opinion only partial weight. The Court does not agree. The ALJ recognized that Dr. McVey did not have access to Plaintiff's entire medical record since the alleged onset date, including medical examinations from 2015 and 2016 which showed relatively normal mental status examinations and that Plaintiff was stable on her medication regime. Although the ALJ did not adopt Dr. McVey's entire opinion, given that she lacked Plaintiff's entire record, the ALJ did nonetheless afford Dr. McVey's opinion appropriate weight in conjunction with the state agency consultants' opinions that consistently matched Plaintiff's medical record. Dr. McVey opined that "the claimant would be moderately to significantly impaired in her ability to interact with the public, coworkers, and supervisors," therefore, the ALJ took that opinion into account and limited Plaintiff to simple, repetitive tasks in a non-public setting, where she may occasionally interact with coworkers and supervisors, but never with the public. Accordingly, this Court finds the ALJ provided specific and legitimate reasons supported by substantial evidence to analyze the contradicting opinions between the consultative examiner and the state agency consultants in order to determine Plaintiff's mental residual functional capacity.

/ / /

/ / /

/ / /

## C.    Credibility

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

12

physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").  Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

/ / /

/ / /

/ / /

1      1.  <u>Plaintiff's Contentions</u>

2      Plaintiff argues:

3          The ALJ must address Massimo's credibility according to the
       standards set for at 20 C.F.R. § 404.1529 and SSR 96-7p. Massimo's
4      statements are consistent with her medical treatment. The ALJ cannot
       reject the Massimo's testimony about the severity of her symptoms
5      without offering specific, clear and convincing reasons. If it is clear from
       the administrative record that the ALJ would have to award benefits if the
6      claimants … (symptom) testimony was credited the Court will not remand
       to allow the ALJ to make specific findings regarding the statement.
7      Rather, we will … take that testimony to be established as true." *Varvey v.
       Health & Human Servs.*, 859 F. 2d 1396, 1401 (9th Cir. 1988). This
8      Credit-As-True doctrine discourages ALJ's from "concluding first and
       then attempting to justify it by ignoring competent evidence in the record
9      that suggests an opposite result." *Garrison v. Colvin*, 759 F. 3d 995, 1019
       (9th Cir. 2014).
10

11     2.  <u>Disposition</u>

12         Here, Plaintiff argues the ALJ did not offer "specific, clear and convincing

13     reasons" to reject Plaintiff's testimony regarding the severity of her symptoms.  However,

14     Plaintiff fails to offer any argument or analysis and simply makes conclusory statements about the

15     "Credit-As-True doctrine" and what Plaintiff believes is the ALJ's responsibility.  This Court

16     finds the ALJ extensively addressed Plaintiff's credibility, setting forth "specific, clear and

17     convincing reasons" in the record for every decision regarding Plaintiff's subjective testimony

18     that conflicts with the objective medical record.  <u>See</u> CAR28-31.  Plaintiff does not state how the

19     ALJ erred in rejecting Plaintiff's testimony, nor does the Plaintiff offer anything beyond her

20     conclusory statement that her testimony is consistent with the medical record.  Therefore, this

21     Court finds Plaintiff's argument unpersuasive and affirms the ALJ's findings on Plaintiff's

22     credibility.

23     **D.     <u>Residual Functional Capacity Determination</u>**

24         Residual functional capacity is what a person "can still do despite [the

25     individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); <u>see also</u> <u>Valencia v.

26     Heckler</u>, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current

27     "physical and mental capabilities").  Thus, residual functional capacity describes a person's

28     exertional capabilities in light of his or her limitations.

14

In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure. See 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The ALJ is required to record pertinent findings and rate the degree of functional loss. See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

### 1. Plaintiff's Contentions

Plaintiff argues:

> At Step Five the Commissioner must apply the Medical-Vocational Guidelines using medical vocational profile 201.01. Under the medical-vocational profiles 201.10 Massimo is disabled for sedentary and light work, advanced age and no past relevant work, or transferable skills. Appendix 2 to Subpart P of Part 404 of Medical-Vocational Guidelines. 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e)(2)(2006); *Cooper v. Sullivan,* 880 F.2d 1152, 1157 (9th Cir. 1989); *Tackett v. Apfel,* 180 F.3d 1094, 1102 (9th Cir. 1999).
> The ALJ's finds Massimo can perform medium work (AR 27). However, the records does not support the ALJ. Massimo's past jobs are light and sedentary. Medium work requires standing six hours a day and lifting 25 pounds frequently and 50 pounds occasionally. Massimo suffers vertigo and has a BMI of 30. There are no records which establish that she has the ability to be on her feet or lift 25 pounds frequently and 50 pounds occasionally. The ALJ has the burden of proof at Step Five. As such, the ALJ has not provided any evidence to find Massimo can increase her work from light and sedentary to medium. Therefore the ALJ has not met his burden of proof at Step Five.

/ / /

/ / /

/ / /

/ / /

2. <u>Disposition</u>

Here, Plaintiff conflates the burden of proof at Step 4 with the burden of proof at Step 5 by mistakenly concluding that residual functional capacity is established at Step 5 and is therefore the Social Security Administration's burden. However, residual functional capacity is actually determined at Step 4, and thus remains the Plaintiff's burden of proof. Plaintiff alleges the ALJ failed to provide evidence that Plaintiff, who held past jobs classified as light and sedentary, can "increase her work from light and sedentary to medium." This is an argument relating to the ALJ's residual functional capacity determination at Step 4. The Court finds this argument unpersuasive. Residual functional capacity is a measure of the most a Plaintiff can do despite her impairments, not what her past work entailed. <u>See</u> 20 C.F.R. § 404.1545(a). Although in the past Plaintiff might have only done light work, Plaintiff fails to establish that in the past she was incapable of also doing medium work.

Looking at the record in its entirety, the ALJ concluded Plaintiff is capable of medium work. The ALJ afforded great weight to the state agency consultants who provided opinions backed by specific evidence in the record to support their contentions. The state agency consultants concluded Plaintiff could perform the requirements to meet a "medium work" classification. Plaintiff does not point to any evidence from the medical record that indicates she could not perform at this level, other than stating in the past she had worked jobs that didn't require as high of a functional capacity. In sum, the court finds the ALJ properly supported the finding at Step 4 with evidence of record.

**E.  Vocational Findings**

The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. <u>See</u> <u>Heckler v. Campbell,</u> 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

/ / /

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy which the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for

the ALJ's determination must be supported by substantial evidence in the record as a whole.
See
Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

### 1. ALJ's Analysis

At Step 5, the ALJ made the following vocational findings:

In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.19. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:

1. Janitor, DOT code 381.687-018, which is performed at medium exertion level and is unskilled, with a SVP of 2, with approximately 1,092,000 jobs available nationally;

2. Hand Packager, DOT code 920.687-014, which is performed at a medium exertion level and is unskilled, with a SVP of 2, with approximately 168,000 jobs available nationally; and

3. Machine Packager, DOT code 920.685-078, which is performed at a medium exertion level and is unskilled, with a SVP of 2, with approximately 44,700 jobs available nationally.

Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

CAR 32-33.

2.  Plaintiff's Contentions

Plaintiff argues:

The Medical-Vocational Profiles ("the grids") are applied at the fifth step of the analysis under 20 C.F.R. §§ 404.1520, 404.1569 present a short-hand method for determining the availability and numbers of suitable jobs for a claimant. Application of the grids is not discretionary. *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).

20 C.F.R. § 416.962 mandates the ALJ address the medical-vocational profiles showing an inability to make an adjustment to other work. Where there is a showing there is; (a) a severe, medically determinable impairment(s) 20 C.F.R.§§ 416.920(c), 416.921, and 416.923; (b) the claimant at least 55 years old 20 C.F.R.§ 416.963; (c) has no more than a limited education 20 C.F.R. § 416.964; and (d) and no past relevant work 20 C.F.R. § 416.965. If Massimo meets these elements she is disabled under the rules.

Here re; (a) the ALJ finds Massimo has the following severe impairments; post-traumatic stress disorder, anxiety disorder, asthma, and Meniere's disease. 20 C.F.R. §§ 404.1520(c), 416.920(c) (AR 25). As such, (a) is met.

Here re; (b) Massimo was born October 2, 1956. She was 58 years old and five months when she applied for disability benefits (AR 92). As such, (b) is met.

Here re; (c) Massimo has a 10th-grade education and has not completed any other coursework (AR 47). 20 C.F.R. § 416.964 defines "limited education" as 7th grade through 11th grade. As such, (c) is met.

Here re; (d) the ALJ finds Massimo has no past relevant work (AR 32). Massimo meets the past relevant work requirement. As such, (d) is met.

Social Security Administration policy mandates the ALJ may not look to other evidence to rebut this conclusion. SSR 83-5a. "Under no circumstances, may a vocational expert's testimony supplant or override a disability conclusion dictated by the Guidelines." *Swenson v. Sullivan*, 876 F.2d 683, 688 (9th Cir. 1989).

For individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have *only skills that are not readily transferable to a significant range of semi-skilled or skilled work* that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work *warrant a finding of disabled.*

As such (a),(b),(c), and (d) are met and Massimo is disabled under 20 C.F.R. § 416.962; an inability to make an adjustment to other work. Therefore the ALJ committed legal error by denying benefits without applying 20 C.F.R. § 416.962 which finds Massimo disabled.

19

### 3. Disposition

Here, Plaintiff asserts she should have been classified as disabled because she meets the necessary requirements of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, or "the Grids." However, Defendant argues:

> She is incorrect because the Grids direct a finding of *non*-disability for a claimant like Plaintiff who retains the functional capacity to perform medium work, is advanced age (55 and older) or closely approaching advanced age (50-54), has limited education, and has semiskilled past work with skills that are not transferrable to other work. *See* Grids, Rules 203.12, 203.19; *see also* 20 C.F.R. § 404.1563 (age categories).

Plaintiff mistakenly asserts that meeting the requirements of the Grids results in a finding of disability. The Grids are used to direct a finding that a Plaintiff who does meet the requirements is in fact *not* disabled. Because the Plaintiff's entire analysis establishes that she does meet the requirements of the Grids, this Court finds any further arguments that Plaintiff is disabled based on the Grids to be unpersuasive. The ALJ cited evidence substantially supported in the record, including a vocational expert's testimony, to conclude that Plaintiff is capable of medium work and, given this capacity, can perform other jobs that exist in significant numbers in the national economy. Thus, this Court finds the ALJ did not err at Step 5.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 17) is denied;

2.  Defendant's motion for summary judgment (ECF No. 20) is granted;

3.  The Commissioner's final decision is affirmed; and

4.  The Clerk of the Court is directed to enter judgment and close this file.

Dated:  August 16, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE